UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADRIAN RYANEN SWAIN,

          Petitioner,

                                Case No. 1:09-cv-865
v.                                 Hon. Robert J. Jonker

SHIRLEE HARRY,

          Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

## I.      Background

Petitioner's case has a lengthy procedural history spanning over five years in the state courts.  In 2004, petitioner was charged with committing multiple felonies in Ottawa County, Michigan.  In *People v. Swain*, No. 04-28175 (Ottawa Co. Cir. Ct.), petitioner was charged with the following: Count I, conspiracy to commit armed robbery, M.C.L. § 750.529; Count II, armed robbery, M.C.L. § 750.529; Count III, home invasion, second degree, M.C.L. § 750.110a(3); and Count IV, habitual offender, 4th offense notice.  *See Swain*, No. 04-28175 (state court docket sheet) (docket no. 12).  In a second felony case,  *People v. Swain*, No. 04-28191 (Ottawa Co. Cir. Ct.), petitioner was charged with the following: Count I, safe breaking, M.C.L. § 750.531; Count II, breaking and entering a building with intent to commit larceny. *See* Motion & Plea Trans. at pp.12-

14 (Aug. 25, 2004) (docket no. 13).  Finally, petitioner was charged in a third case, *People v. Swain*,

No. 04-28176 (Ottawa Co. Cir. Ct.), for possession of cocaine.  *Id.* at pp. 11, 16.[1]

      Petitioner's trial in *Swain*, No. 04-28175, was set for September 9, 2004.  *See Swain*,

No. 04-28175 (state court docket sheet).  On August 25, 2004, the trial court heard, and then denied,

petitioner's motion to discharge his appointed counsel.  *See* Motion & Plea Trans. at pp. 1-9 (Aug.

25, 2004).  On that same day, petitioner entered into a plea agreement which the prosecutor

summarized as follows:

> Ryanen Swain with regard to File 04-28191-FC and File No. 04-28175-FC.
> It's my understanding that the defendant wishes to plead guilty, Your Honor, to the
> count of safe breaking and the count of B & E of a building with intent, and, also, the
> count of armed robbery.  Upon entry of guilty pleas, to those counts, Your Honor,
> the People would move to dismiss the home invasion charge, habitual offender
> notices in all files, another possession of cocaine and possession of marihuana file
> as well, Your Honor.  That's the full agreement as I understand it.

*Id.* at p. 11.[2]  Both petitioner and his attorney stated that this was the complete plea agreement.  *Id.*

at pp. 11-16.  Petitioner subsequently pled guilty to the charges of armed robbery, safe breaking, and

breaking and entering a building with intent to commit the crime of larceny.  *Id.* at pp. 16-24.

      Petitioner was sentenced on September 24, 2004.  *See* Sent. Trans. (docket no. 14).

After hearing petitioner's objection to the amount of restitution related to the safe breaking, the trial

judge reduced the order of restitution from $4,739.00 to $2,679.30.  *Id.* at pp. 3-4.  Petitioner was

sentenced as follows:   In case no. 04-28191, Count I (safe breaking), petitioner was sentenced to

a prison term of not less that 12 nor more than 120 months.  *Id.* at p. 7.  In case no. 04-28191, Count

---

[1] The court record contains little documentation regarding the charge of possession of cocaine, which was dismissed as part of petitioner's plea agreement.  *See* discussion, *infra*.

[2] While the prosecutor originally stated that petitioner was charged with possession of cocaine and marihuana, he later clarified that the charge involved possession of cocaine only.  Plea Trans. at p. 16.

II (breaking and entering a building with intent to commit larceny), petitioner was sentenced to a period of not less than 180 nor more than 540 months.  *Id.*  In case no. 04-28175 (armed robbery), petitioner was sentenced to a period of not less than 180 nor more than 540 months.  *Id.*  The three sentences ran concurrently, with 134 days' credit for time served.  *Id.* at pp. 7-8.  Petitioner was also ordered to pay restitution in the amount of $585.00 related to the armed robbery.  *Id.* at p. 8.

Petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals raising four issues:

> I.      Did the trial court error when it scored 1 point for OV 2 on petitioner's sentencing guidelines?
>
> II.     Did the trial court error when it scored 10 points for OV 13 on petitioner's sentencing guidelines?
>
> III.    Did the trial court error when it scored 10 points for OV 14 on petitioner's sentencing guidelines?
>
> IV.     Petitioner's sentencing violated the core concern of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) that someone accused of committing a crime should have the ability to predict with certainty the judgment from the face of the felony indictment.

*People v. Swain*, No. 264522 (Mich. App.) (Petitioner's Application) (docket no. 16).  The Michigan Court of Appeals denied the application for lack of merit in the grounds presented.  *Swain*, No. 264522 (Jan. 10, 2006).

Petitioner raised five issues in his delayed application for leave to appeal to the Michigan Supreme Court:

> I.      The trial court erred when it scored one point for OV 2 on [petitioner's] sentencing guidelines (crimes against a person) where the instructions do not define, or state a pellet gun as a weapon.
>
> II.     OV 13 was improperly scored, depriving [petitioner] of due process of law where 10 points were scored by the sentencing court and OV 13 requires that the

offense had to be part of a pattern of felonious criminal activity directly related to membership in an organized criminal group.

III.     The court improperly scored OV 14 , and in doing so violated [petitioner's] right to due process in that 10 points were scored for "Leader" in a multiple offender situation where in fact the record discloses just the opposite fact, i.e., [petitioner] was not the leader.

IV.     This matter implicates the *Apprendi* rule as stated in *Blakely v. Washington*, 542 U.S. 296 (2004).

V.     Moreover, in light of the decision in *Halbert v. Michigan*, 545 U.S. 605 (2005), it would appear this Honorable Court should reconsider the fact that petitioner was not granted counsel to perform his application for leave to appeal to the Court of Appeals, and no competent lawyer has yet to examine the record for error of sentencing counsel. This court should order the trial court to appoint counsel for petitioner and to allow him to proceed as on leave granted.

*People v. Swain*, No. 130627 (Mich.) (Petitioner's Application) (docket no. 17). In lieu of granting leave to appeal, the Michigan Supreme Court remanded this matter to the Ottawa County Circuit Court for determination of whether petitioner was indigent and, if so, for appointment of appellate counsel in light of *Halbert*. *Id.* (Amended Order, June 26, 2006). The Michigan Supreme Court further provided:

Appointed counsel may file an application for leave to appeal with the Court of Appeals and / or any appropriate postconviction motions in the trial court, within twelve months of the date of the circuit court's order appointing counsel, as, at the time defendant was denied counsel, he was entitled to file pleadings within twelve months of sentencing reather [sic] than six . . . Counsel may include the issues raised, but is not required to include, those issues raised by defendants in his application for leave to appeal to this Court.

*Id.*

The trial court appointed counsel for petitioner, who moved for a *Ginther* hearing and to withdraw his guilty plea.[3]  *See Swain*, No. 04-28175 (state court docket sheet).  The *Ginther* hearing was held on December 14, 2007.  *Ginther* Hear. Trans. (docket no. 15).  The trial judge summarized the five claims raised by petitioner at the hearing as follows:

> In his motion for a Ginther hearing, defendant raises five aspects of his trial counsel's performance that support his claim that he was deprived of effective assistance of counsel.  First, defendant claims that counsel failed to obtain a copy of the search warrant affidavit from the prosecuting attorney; second, counsel failed to interview witnesses to corroborate their statements included in the affidavit; and, third, counsel failed to move to suppress the evidence seized during the execution of the search warrant because the affidavit was insufficient to provide probable cause.  Defendant's fourth claim of deficient performance is that counsel failed to move to suppress defendant's statement to investigating officers.  Defendant's final claim of deficient performance is that counsel failed to review the presentence report with defendant before sentencing.

*People v. Swain*, Nos. 04-28175 and 04-28191 (Opinion and Order at p. 2) (Jan. 16, 2008) (docket no. 20).

With respect to plaintiff's three claims involving the search warrant, the state trial judge found that counsel's failure to request a copy of the search warrant and supporting affidavit was not a reasonable investigation of the case and constituted deficient performance.  *Id.* at pp. 8-9.  However, the court found that petitioner was not prejudiced because he failed to show that counsel's deficient performance caused him to enter an unknowing and involuntary guilty plea.  *Id.* at p. 9.  The court also found that petitioner was not prejudiced by counsel's failure to file a motion to suppress the search warrant affidavit, because a competent criminal attorney could have opined that suppression of the affidavit would have failed.  *Id.* at p. 16.  In this regard, the court further found

---

[3] In *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922, 925 (1973), the Supreme Court of Michigan held that a criminal defendant should move for a new trial and seek to make a separate factual record in the trial court if the trial record does not cover the claims he wishes to raise on appeal." *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004).

that petitioner did not articulate how the evidence seized by the search warrant (an orange hat, a crowbar and "some other stuff") implicated him or to what extent this particular evidence influenced his decision to plead guilty.  *Id.*  The court denied petitioner's fourth claim of deficient performance (counsel's failure to suppress his statement to the police) because petitioner did not address the issue at the hearing.  *Id.* at p. 17.  The court denied petitioner's fifth claim of deficient performance (counsel's failure to review the pre-sentence report (PSIR) with him prior to sentencing) for two reasons: petitioner abandoned this claim when he failed to address it at the hearing; and counsel's failure to review the PSIR occurred after petitioner's guilty plea and could not have affected his decision to plead guilty.  *Id.*  After reviewing the evidence at the *Ginther* hearing, the court concluded that:

> Trial counsel's performance was not so deficient that [petitioner's] plea was made unknowingly and involuntarily; thus [petitioner] was not denied effective assistance of counsel.  [Petitioner's] motion to withdraw his guilty plea and proceed to trial is DENIED.

*Id.* at p. 18.

Petitioner, through counsel, applied for leave to appeal the trial court's opinion and order to the Michigan Court of Appeals raising the following issue:

> I.   Whether the trial court erred in denying petitioner's motion to withdraw his plea pursuant to a *Ginther* Hearing?

*People v. Swain*, No. 283529 (Mich. App.) (Application for leave to appeal).[4]  The Michigan Court of Appeals denied the delayed application for lack of merit in the grounds presented.  *Id.* (Order, March 12, 2008) (docket no. 18).  Petitioner raised the same issue in his *pro se* application for leave

---

[4] A copy of the application filed with the Michigan Court of Appeals is attached to petitioner's application for leave to appeal to the Michigan Supreme Court.  *See* docket no. 19.

to appeal to the Michigan Supreme Court, which that court denied.  *People v. Swain*, No. 136130

(Order, June 23, 2008) (docket no. 19).

Having exhausted his direct appeal, petitioner returned to the Ottawa County Circuit

Court, where he filed a motion for relief from judgment pursuant to MCR 6.500 *et seq.*  Petitioner

raised four claims in this motion, which the trial judge listed as follows:

> I.      Petitioner is entitled to withdraw his guilty plea because appellate counsel
> was ineffective and failed to raise important issues before the trial court and on
> appeal.
>
> II.      Petitioner is entitled to relief from judgment because his trial counsel was
> ineffective.
>
> III.      Petitioner is entitled to relief from judgment because the prosecution withheld
> exculpatory evidence.
>
> IV.      Petitioner is entitled to relief from judgment because this court erred in
> denying petitioner's motion to withdraw his guilty plea.

*People v. Swain*, Nos. 04-28175 and 04-28191 (Opinion and Order at p. 7) (Aug. 14, 2008) (docket

no. 20).  The trial court denied Issues I and III on the merits, and determined that MCR 6.508(D)(2)

precluded relief as to Issues II and IV.  *Id.*

Petitioner filed a *pro se* application for leave to appeal to the Michigan Court of

Appeals, raising five issues[5]:

> I.      Did the trial court make a clearly erroneous finding of fact when it
> misconstrued the factual evidence in the records and committed clear legal error in
> its conclusion of law?
>
> II.      Did appellate counsel's ineffective assistance fall below an objective standard
> of reasonableness in violation of petitioner's Sixth Amendment rights to overcome
> the  good cause and actual prejudice of MCR 6.508(D)?

_____

[5] Petitioner's pro se application included a number of grammatical errors.  For purposes of clarity on review, the court has re-stated the issues without affecting the nature of the issues raised by petitioner.

7

III. Did petitioner's trial counsel render ineffective assistance in violation of the Sixth Amendment causing his guilty plea to be invalid?

IV. Did the prosecution's withholding of exculpatory evidence violate petitioner's Fourteenth Amendment right to due process making his plea involuntary and unintelligent?

V. Did the trial court abuse its discretion in determining that counsel's deficient performance was not prejudicial and did not warrant withdrawal of petitioner's plea?

*People v. Swain*, No. 288133 (Mich. App.) (Application for leave to appeal) (docket no. 20). The

Michigan Court of Appeals denied the application because petitioner "failed to meet the burden of

establishing entitlement to relief under MCR 6.508(D)." *Id.* (Order, Dec. 8, 2008).  Petitioner raised

the same five issues in his application for leave to appeal to the Michigan Supreme Court, which that

court denied.  *People v. Swain*, No. 138049 (Order, Aug. 6, 2009) (docket no. 21).

 Swain has now filed a petition seeking habeas relief under 28 U.S.C. § 2254, raising

six grounds for relief:

I. Did the trial court err in denying petitioner's motion to withdraw his plea?

II. Did the trial court make a clearly erroneous finding of fact when it misconstrued the factual evidence in the records and committed clear legal error in its conclusion of law?

III. Did appellate counsel's ineffective assistance fall below an objective standard of reasonableness in violation of petitioner's Sixth Amendment rights to overcome the  good cause and actual prejudice of MCR 6.508(D)?

IV. Did petitioner's trial counsel render ineffective assistance in violation of the Sixth Amendment causing his guilty plea to be invalid?

V. Did the prosecution's withholding of exculpatory evidence violate petitioner's Fourteenth Amendment right to due process making his plea involuntary and unintelligent?

VI. Did the trial court abuse its discretion in determining that counsel's deficient performance was not prejudicial and did not warrant withdrawal of petitioner's plea?

8

Petition (docket no. 1); Brief (docket no. 3).

## II. Procedural default

Respondent contends that petitioner's Issues V and VI are barred from habeas review under the procedural default doctrine.

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Petitioner first raised Issue V in his post-conviction motion for relief from judgment brought pursuant to MCR 6.500 *et seq*. The trial court addressed this issue on the merits, finding that the affidavit used to support the search warrant did not contain "perjured testimony" and was not exculpatory evidence withheld by the prosecution in violation of *Brady v. Maryland*, 373 U.S.

9

83 (1963).   Both the Michigan Court of Appeals and the Michigan Supreme Court denied applications for leave to appeal, because petitioner failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).   The Sixth Circuit has previously held that MCR 6.508(D) is a valid procedural bar for habeas purposes.   *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson*, 238 F.3d at 407-08; *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000).   However, in *Guilmette v. Howes*, 624 F.3d 286, 288 (6th Cir. 2010) (*en banc*), the Sixth Circuit held that brief orders which cite only MCR 6.508(D) - i.e., the type of orders entered by the Michigan Court of Appeals and the Michigan Supreme Court in this case - "are not explained orders invoking a procedural bar."   In reaching this determination, the court observed that "Michigan practice confirms that brief orders citing Rule 6.508(D) in some cases refer to a petitioner's failure to meet his burden on the merits." *Guilmette*, 624 F.3d at 291. "Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or denial of relief on the merits, the orders are unexplained." *Id.*   Thus, courts "must look past such orders 'to the last reasoned state court opinion to determine the basis for the state court's rejection' of a petitioner's claim." *Skinner v. McLemore*, 425 Fed.Appx. 491, 495 (6th Cir. 2011), quoting *Guilmette*, 624 F.3d at 291.   Here, the last reasoned state opinion was the trial court's order denying the motion for relief from judgment entered on August 14, 2008.   In that order, the trial court addressed the merits of Issue V. Accordingly, petitioner's Issue V is not subject to the procedural default doctrine.

Respondent contends that Issue VI is subject to procedural default because petitioner did not raise the issue on direct appeal.   The court disagrees.   The Michigan Supreme Court's order of remand authorized petitioner's appointed counsel to file an application for leave to appeal his

conviction to the Michigan Court of Appeals.  *Swain*, No. 130627 (Amended Order, June 26, 2006). While appointed counsel's application for leave to appeal was not lengthy, the issue raised in the application was sufficiently broad to encompass Issue VI.  Accordingly, petitioner's Issue VI is not subject to the procedural default doctrine.

### III.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Here, petitioner has exhausted all of his habeas issues.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, -- U.S. --, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted). "Under the 'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams* at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

### IV.   Petitioner's habeas claims

### A.   The validity of petitioner's guilty plea (Issues I, II, IV and VI)

### 1.   Legal standard

A voluntary plea of guilty constitutes an admission of all the material elements of a crime. *McCarthy v. United States*, 394 U.S. 459, 466 (1969). "A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers." *Id.*   In addition, a criminal defendant forecloses all subsequent non-jurisdictional appeals to his conviction by pleading guilty. *United States v. Bahhur*, 200 F.3d 917, 923 (6th Cir. 2000); *United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991).  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Tollett v. Henderson*, 411 U.S. 258 (1973).

Where a criminal defendant pleads guilty, the test for determining the validity of a guilty plea under the federal constitution is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).  *See Hart v. Marion Correctional Facility*, 927 F.2d 256, 257 (6th Cir. 1991) (to satisfy the dictates of due process, a plea "must be a voluntary, knowing, intelligent act").  For a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentence imposed. *See King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795-96 (6th Cir. 1991); *Hart*, 927 F.2d at 259.

When a state criminal defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary plea by producing a written transcript of the state court proceeding. *See Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact. *Id.* A habeas petitioner "must overcome a heavy burden" to have a federal court overturn these state court findings. *Id.* at 328.

### 2.      Petitioner's guilty plea

The record reflects that the petitioner was aware of the maximum sentence imposed on all counts. Plea Trans. at pp. 10-17. In addition, petitioner answered a number of questions which established that his plea was a voluntary, intelligent and knowing act. *Id.* at pp. 14-17. Specifically, petitioner testified that he was giving up the following rights: his right to a trial, to the presumption of innocence, to have the prosecutor prove his guilt beyond a reasonable doubt, to have witnesses appear against him, to ask questions of those witnesses, to have the court order witnesses to appear on his behalf, and to remain silent. *Id.* at p. 14. Petitioner also testified: that no threats were made against him to plead guilty; that no promises were made as an inducement to plead guilty other than the stated agreement with the prosecutor; and that his decision to plead guilty was given freely, voluntarily and of his own choice. *Id.* at p. 16.

Petitioner provided sufficient facts to establish that he committed each of the three crimes involved in his guilty plea. At the time he committed the crimes, petitioner lived at 80 East Lakewood Boulevard, Apartment 16, Holland Township, Ottawa County, Michigan. *Id.* at p. 23. In support of the armed robbery charge, petitioner testified: that on May 11, 2004, he ordered a pizza

from Papa Johns; that he and James Bissonette agreed "to have some fun" by donning masks and robbing "the pizza man"; that he and Bissonette used pellet guns in the robbery; that he swung at the pizza man and "probably" hit him because the victim fell; and that he took the pizza and Bissonette took the money from the victim (about 30 dollars).  *Id.* at pp. 18-19.  In support of the breaking and entering and safe breaking, petitioner testified: that at about 1:30 a.m. on May 13, 2004, he was "bumming around" by "Sales Heating and Cooling" with a crowbar; that he popped one of the business' windows open; that he did not have permission to enter the business; that he saw a safe and used one of the business' dollies to move the safe to the back door; that he "freaked out" because a van was parked in the back; that he brought his car to the back  of the building; that after dropping the safe "about six times" he placed it in his car; when he arrived home, he used his child's skateboard to move the safe into his house; that he pried the safe open with his crowbar and took out about $2,600.00; that he enlisted a neighbor, Joshua Sloan, to help him move "a box" (i.e., the safe) into his car; that he covered the safe with some curtains; that he threw the safe in a ditch and tried to set fire to it.  *Id.* at pp. 19-23.[6]  The trial judge found that petitioner's plea was voluntary and that he committed the three crimes.  *Id.* at p. 23.  The transcript of petitioner's plea supports the trial judge's finding.  *See  Hill*, 474 U.S. at 56; *King*, 17 F.3d at 154 *Garcia*, 991 F.2d at 326; *Hart*, 927 F.2d at 257, 259.

---

[6] It is unclear whether "Joshua Sloan" is the same person as "Joshua VanSlooten," petitioner's accomplice who gave a statement implicating petitioner.  *See* discussion in § IV.A.3.b., *infra*.

### 3.   Petitioner's claim of ineffective assistance of counsel

### a.   Legal standard

Although the plea transcript reflects that petitioner gave a voluntary and knowing guilty plea, petitioner contends that his plea was involuntary due to the ineffective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland,* 466 U.S. at 687.  In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.  "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original), *cert. denied* 508 U.S. 975 (1993).   Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment.  *Strickland*, 466 U.S. at 689-690.

When a guilty plea is challenged on the basis of ineffective assistance of trial counsel, the court applies the two-prong *Strickland* test.  *Hill*, 474 U.S. at 58.  As to the first prong, the adequacy of counsel's performance, *Strickland* advises that "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of

deference to counsel's judgments." *Strickland*, 466 U.S. at 691.  As to the second prong, the

prejudice requirement, the court "focuses on whether counsel's constitutionally ineffective

performance affected the outcome of the plea process." *Railey v. Webb*, 540 F.3d 393, 415-16 (6th

Cir. 2008), quoting *Hill*, 474 U.S. at 58-59.  To prevail on the prejudice requirement, a habeas

petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not

have pleaded guilty and would have insisted on going to trial." *Premo v. Moore*, -- U.S. --, 131 S.Ct.

733, 743 (2011) (internal quotation marks omitted).

      Where a state criminal defendant has pled guilty, the court should closely scrutinize

a subsequent federal habeas claim that the guilty plea was invalid due to the alleged ineffective

assistance of trial counsel.  As the court observed in *Premo*:

> Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks.  .  .  .
>
>     These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage.  Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context.  First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real.  The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision.  There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial.  In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel.  *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).  AEDPA compounds the imperative of judicial caution.
>
>     Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect.  *Strickland* allows a defendant "to escape rules of waiver and forfeiture," *Richter*, --- U.S., at ----, 131 S.Ct. 770.  Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*.

> The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Id.* at 741-42.

### b.    Discussion

Petitioner's claims of ineffective assistance of trial counsel were addressed during the *Ginther* hearing.  As discussed, *supra*, the trial judge found that petitioner's counsel was deficient for failing to request a copy of the search warrant and supporting affidavit and failing to perform a reasonable investigation of the case.  Opinion and Order (Jan. 16, 2008) at pp. 8-9.  However, the judge rejected petitioner's claim of ineffective assistance of counsel because petitioner was not prejudiced by counsel's action with respect to the search warrant and counsel's overall performance was not itself deficient:

> [A]lthough defendant argues that he was prejudiced by counsel's failure to move to suppress the search warrant because "the search warrant was the whole case," defendant has not explained why the evidence discovered by the search would have been essential for a conviction.  During the hearing on the motion, defendant stated that police officers found an orange hat, a crowbar, and "some other stuff."  But defendant did not or could not articulate how that evidence implicated him and why or to what extent it influenced his decision to plead guilty.  Rather, defendant only stated that the orange hat "would have gone along with something that somebody said, and everything they got after went with the orange hat.  So the case was starting to build from the time the search warrant . . . was executed."  Defendant has failed to show that counsel's error deprived him of effective assistance of counsel that made his plea involuntary and unknowing.
>
> *            *            *
>
> In summary, in light of the facts and circumstances of this case, the court concludes that counsel's advice was within the range of competence expected of a criminal attorney.  Defendant faced trial as a fourth habitual offender, MCL 769.12, and a potential maximum minimum sentence of 37.5 years.  If defendant proceeded to trial, his statement to police implicating himself would likely be admitted, as would the testimony of two of his associates who "put him down."  Even without the

18

seized evidence, the prosecution had a strong case against him.  Advise to plead guilty to reduced charges in this circumstance is competent advice.  Further, defendant himself wanted to obtain a plea agreement, as clearly shown by his letters to counsel.  Counsel's focus on obtaining a favorable agreement on his behalf was not deficient performance.

*Id.* at pp. 16, 18.

While petitioner now claims that counsel's failure to examine the search warrant was critical to his decision to plead guilty, the record reflects otherwise. At the *Ginther* hearing, counsel testified that:

[Petitioner's] whole management of the case was getting a cap on his minimum.  He knew, from my conversations, he knew he was going down.  The question was for how hard and how long.

*Ginther* Trans. at p. 55.  Counsel's position is supported by the parties' pre-trial correspondence which the trial judge examined in detail.

At the *Ginther* hearing, petitioner conceded that the two letters he wrote to counsel in June and July 2004, did not ask for a copy of the affidavit or to challenge the validity of the search warrant.  *Ginther* Trans. at pp. 26-29; Opinion and Order at p. 4 (Jan. 16, 2008).  Rather, the correspondence between petitioner and his counsel focused on negotiating a deal with the prosecutor which would resolve the three outstanding criminal cases.  In his letter to counsel dated June 28, 2004, petitioner asked counsel to offer a plea agreement to the prosecutor where he would plead guilty to armed robbery, possession with intent to deliver cocaine, and one breaking and entering charge, in exchange for a sentence of one year in the county jail, two years on a tether and five years probation.  Opinion and Order at p. 4 (Jan. 16. 2008).[7]  Petitioner felt that statement regarding the

_____

[7] The court notes that the letters between petitioner and his counsel, which were admitted as People's Exhibits 1-5 at the *Ginther* hearing, are not included in the hearing transcript.

robbery could be suppressed because it was made less than 12 hours after his arrest and he was high on cocaine. *Id.* Petitioner refused to plead guilty to safe breaking because Joshua VanSlooten gave police a confession that he (VanSlooten) cracked the safe and that "I [petitioner] simply stole it." *Id.* Counsel responded to petitioner that the prosecutor had little incentive to allow a guilty plea on the armed robbery charge because petitioner confessed after being advised of his *Miranda* rights, and that even without the confession, petitioner's friends (VanSlooten and Bissonette) "have put you down." *Id.* at pp. 4-5.[8] With respect to the safe breaking charge, counsel reminded petitioner that he had confessed to stealing the safe after receiving his *Miranda* warnings and that he could be convicted of opening the safe under an aiding and abetting theory. *Id.*

In his letter of July 18, 2004, petitioner informed counsel that he had been very cooperative with police and that the prosecutor should agree to a cap on his sentence, which petitioner felt should be capped at 24 to 60 months. *Id.* at p. 5. In a letter dated August 9, 2004, counsel explained that the prosecutor would not agree to such a short cap, because petitioner's minimum sentence range under the sentencing guidelines was 11.25 to 18.75 years and that little could be done about this range due to petitioner's criminal record. *Id.* Counsel also warned petitioner that with the habitual offender enhancement, his minimum sentence range under the sentencing guidelines would be 11.25 to 37.5 years. *Id.*

In a letter dated August 16, 2004, counsel again cautioned petitioner regarding the risk of going to trial, noted that petitioner faced a maximum minimum sentence of 37.5 years and that "a person might question the wisdom of exposing one's self to a possible sentence that is double

---

[8] Counsel's response, referenced as Exhibit 3 in the opinion, was in a letter dated July 12, 2004. *Ginther* Trans. at pp. 30, 38.

what it otherwise would be" (due to the habitual offender enhancement). *Id.* Insight into petitioner's apparent lack of interest on trial preparation was evidenced by counsel's statement in the letter that he (counsel) would not "just be there" on the day of trial (as petitioner had instructed), but would be prepared to present a defense. *Id.*

While some of petitioner's testimony at the *Ginther* hearing was critical of counsel's lack of preparation for trial, other testimony reflects that a major concern (if not his main concern) was reaching a plea deal to avoid the lengthy sentence due to his habitual offender status. *Ginther* Trans. at pp. 17-18. For example, petitioner testified that when he first met with counsel, counsel referred to the sentencing guidelines and told him that "You're going to get seventeen-and-a-half years if I can't make a deal." *Id.* at p. 22. Petitioner responded, "Dude, you're my lawyer, man. Can't you do something besides that?" *Id.* In addition, petitioner testified that the WEMET (West Michigan Enforcement Team) promised him a deal and to help him out if he worked with them and give them a confession. *Id.* at pp. 16-18, 28. However, at some point after petitioner gave his confession, the authorities "weren't interested anymore" and he was facing a maximum minimum sentence of over 30 years if convicted. *Id.*

While petitioner disputes the trial judge's conclusion regarding ineffective assistance of counsel, he does not address the relevant issue, i.e., was there "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Premo*, 131 S.Ct. at 743. While petitioner now claims that he had no choice but to plead guilty due to counsel's failure to review the search warrant and affidavit, the correspondence from 2004 demonstrates otherwise. Based on the record developed at the *Ginther* hearing, the trial judge properly found that counsel's failure to investigate and examine the search warrant and affidavit did

not prejudice petitioner and that counsel's ultimate advice to plead guilty did not constitute deficient performance.   In this regard, petitioner could not articulate how the few items seized implicated him in the crimes, or how the seizure of these items influenced his decision to plead guilty. Even if the search warrant had been suppressed (an outcome which the trial court found unlikely), petitioner faced strong evidence in the form of his confession and the statements of his two accomplices. Under the facts of this case, the trial judge properly found that petitioner wanted to obtain a plea agreement and that counsel's advice to plead guilty was competent.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d).  Petitioner's claim for relief on Issues I, II, IV and VI should be denied.

### B.   Issue III

Petitioner contends that the trial judge failed to properly rule on his motion for relief from judgment brought pursuant to MCR 6.508.  While petitioner's argument includes references to ineffective assistance of appellate counsel, his  raises this issue in the context of showing cause and prejudice with respect to the trial judge's denial of his motion for post-conviction relief under Michigan law.   Petitioner's claim, which challenges a ruling in a state collateral post-conviction proceeding, is not cognizable on federal habeas review.  "[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007).  Accordingly, petitioner's claim for relief on Issue III should be denied.

C.      Issue V

Petitioner contends that the prosecutor committed a *Brady* violation by failing to disclose exculpatory evidence.  In the last reasoned state court opinion addressing this issue, the trial judge stated as follows:

Defendant's second claim, that appellate counsel was ineffective for failing to raise the *Brady* violation - its failure to provide a copy of the search warrant affidavit in response to defendant's discovery request - is also without merit. Defendant is correct that reversal of a conviction is required if the prosecution withholds exculpatory evidence.  *Brady*, *supra*, 373 US at 87.  However, even if the prosecution withheld the affidavit, the search warrant was not exculpatory evidence. As discussed in the Court's earlier opinion, the affidavit was sufficient to establish probable cause.  It accurately reflected the facts despite its failure to indicate just where Jose Mora-Chavez was standing when he watched the men attempt to unload defendant's vehicle.  It clearly articulated a "criminal nexus" between the criminal activity and the place to be searched - his apartment - because it clearly demonstrated that there was some reason evidence would be found in defendant's apartment and not  somewhere else.  *United States v. Carpenter*, 360 F.3d 591, 594 (CA 6, 2004).

Defendant again argues that the search affidavit contains "perjury" and that if challenged, the trial court would have suppressed the evidence gathered from the search.  Defendant's claims are unsupported by the facts.  First, the fact that the affidavit states that the suspects ran in a northwesterly direction but Deputy Todd's police report indicates that the victim stated that the suspects ran in a north or northeasterly direction does not indicate that the affiant included perjury in the affidavit.  Northeast and northwest are not "opposite" directions as defendant argues, and frankly, a victim who has just been held up at gunpoint and struck on the head in a dark and unfamiliar place may not recognize northeast from northwest. [FN 3]. Further, the affiant noted that the K-9 officer tracked the suspects to apartments 15 and 16 [where petitioner lived], and officers' reports defendant has provided confirm that fact.  The statement in the affidavit was not made with reckless disregard for the truth.

Second, the affiant did not state that Mora-Chavez [an individual who provided information to the affiant] identified the defendant as one of the men he saw "that night" as defendant alleges.  The affidavit actually states that Mora-Chavez identified Joseph Bissonette as one of the men he saw moving the box from the vehicle , and states that Mora-Chavez "knows Adrian Swain operates this vehicle on a regular basis."  The affidavit did not include perjured testimony and was not exculpatory evidence.  The prosecution did not violate defendant's constitutional

rights by failing to disclose it to defendant. Appellate counsel was not ineffective for not arguing this claim on appeal. [FN 4]

> [FN 3] Defendant discusses in some detail that apartments 15 and 16 are not "northwest" of apartment 8, where the assault took place and so the suspects would not have run northwest to get to apartment 15 and 16, but straight west. But there is no reason to believe that the suspects ran directly to their own apartment; rather, it is more likely that they did not run directly to their own homes.

> [FN 4] In addition, as the Court indicated in its earlier opinion, it recognized that defendant was addressing the issue of withholding exculpatory evidence, evaluated that argument, and found it wanting.

Opinion and Order at pp. 5-6 (Aug. 14, 2008).

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process were the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. 83. "A *Brady* violation includes three elements: (1) the evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *Doan v. Carter*, 548 F.3d 449, 459 (6th Cir.2008), citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)) (internal quotation marks omitted). Here, the trial judge properly determined that the affidavit was not exculpatory. On the contrary, the affidavit tended to incriminate - not exculpate - petitioner by connecting him to the suspicious activity in the apartment complex.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Petitioner's claim for relief on Issue V should be denied.

24

## V.    Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**.  Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  August 21, 2012                    /s/ Hugh W. Brenneman, Jr.
                                           HUGH W. BRENNEMAN, JR.
                                           United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).